# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BRIAN HALL,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 08-1715 (RMC)** |
| | ) | |
| **TOM DASCHLE, Secretary,** | ) | |
| **Department of Health & Human Servs.,** *et* | ) | |
| *al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Brian Hall, a retiree from the federal Department of Housing and Urban Development ("HUD"), sues the Department of Health and Human Services ("HHS") to avoid being forced to accept Medicare Part A, and forego the private health insurance that he now enjoys. Most immediately, Mr. Hall moves for a temporary restraining order to prevent HHS and its constituent agency, the Social Security Administration ("SSA"), from enrolling him in Medicare Part A now that he has turned age 65. Mr. Hall complains that if he refuses to accept Medicare Part A, he will not only lose all of his future monthly Social Security benefits pursuant to HHS policies, but he also will be required to repay to the SSA all of the monthly Social Security benefits he has received over the past three years (since he retired at age 62). The Court will deny Mr. Hall's motion for a temporary restraining order.

## I. FACTS

Brian Hall was formerly an employee of, and is now retired from, HUD. Am. Compl. ¶ 13. He retired at age 62. Pursuant to the Federal Employee Health Benefits ("FEHB") program,

he chose to participate in the Mail Handlers Benefit Plan - Consumer Option upon retirement, a plan that includes a Health Savings Account ("HSA") and a high-deductible health insurance policy. Pl.'s Mem. in Support of Mot. for TRO ("Pl.'s Mem."), Attach. 1 (Decl. of Brian Hall ("Hall Decl.") ¶ 3). Mr. Hall alleges that this insurance policy will be available for the balance of his life and will cover his future health care expenses unless he is compelled to enroll in Medicare Part A. *Id.* ¶¶ 3-8.

Mr. Hall applied for retirement benefits under Title II of the Social Security Act on October 20, 2005. Defs.' Opp'n to Pl.'s Mot. for TRO, Ex. B (Decl. of Craig A. Street ("Street Decl.") ¶ 4). That application stated on the first page, in all capital letters, "I APPLY FOR ALL INSURANCE BENEFITS FOR WHICH I AM ELIGIBLE UNDER TITLE II (FEDERAL OLD-AGE, SURVIVORS, AND DISABILITY INSURANCE) AND PART A OF TITLE XVIII (HEALTH INSURANCE FOR THE AGED AND DISABLED) OF THE SOCIAL SECURITY ACT, AS PRESENTLY AMENDED." *Id.* ¶ 5. Mr. Hall began to receive Social Security retirement benefits in February 2006. *Id.* ¶ 6.

Mr. Hall complains that, because of certain policies of HHS,[1] he will automatically be enrolled in Medicare Part A in January 2009 because he turned 65 years of age on January 3, 2009. *See* Pl.'s Mem. at 2. Believing that the medical care available to Medicare patients is inferior to that provided under private health insurance, Mr. Hall has notified HHS that he is unwilling to enroll in Medicare Part B, which provides coverage for physician care, but he cannot similarly decline Medicare Part A, which provides coverage for hospital costs. *See id.* at 3-4. As a result, he

---

[1] *See* Program Operations Manual System ("POMS") Hospital Insurance ("HI") 00801.002, *Waiver of HI Entitlement by Monthly Beneficiary*; POMS HI 00801.034, *Withdrawal (WD) Considerations*; and POMS GN 00206.020, *Withdrawal (WD) Considerations When Hospital Insurance (HI) is Involved*. These POMS are available at https://secure.ssa.gov/apps10/poms.nsf/partlist!OpenView.

will be forced to discontinue his FEHB health insurance plan, *see* 5 U.S.C. § 8901 *et seq.*, as he will no longer be able to contribute to his HSA, and his insurance carrier will cease covering his health care costs and expenses as the primary insurer.  *See* 26 U.S.C. § 223(b)(7); IRS Publication 969, *available at* www.irs.gov; Am. Compl. ¶ 13; Hall Decl. ¶ 21.

Mr. Hall contends that upon reaching age 65, he automatically became "an individual who is entitled to benefits under Part A of this subchapter or enrolled under Part B of this subchapter[,]" 42 U.S.C. § 1395a(b)(5), and thereby became a "Medicare beneficiary." *Id.*  And, while Medicare beneficiaries can enter in private contracts with physicians for medical care, 42 U.S.C. § 1395a(b)(1), Mr.  Hall believes that a contracting physician would thereby be barred from submitting *any* claim to Medicare for a period of two years, even for other patients.  *See* 42 U.S.C. § 1395a(b)(3)(B)(ii); *United Seniors Ass'n v. Shalala*, 182 F.3d 965, 968 (D.C. Cir. 1999) ("This means that a doctor who enters into a . . . private contract with even a single patient is barred from submitting a claim to Medicare on behalf of any patient for a two-year period.").  Mr. Hall fears that his physicians and providers will not provide health care services and be paid privately by him so long as he is a "Medicare beneficiary."

Further, as a "Medicare eligible individual," Mr. Hall will no longer be able to contribute to his HSA and use pre-tax dollars for his health care costs.  According to 26 U.S.C. § 223(b)(7):

> *Medicare eligible individuals*
>
> The limitation under this subsection for any month with respect to an individual shall be zero for the first month such individual is entitled to benefits under Title XVIII of the Social Security Act and for each month thereafter.

*See also* IRS Publication 969, *available at* www.irs.gov.

Mr. Hall alleges that the policies reflected in the POMS cited above are not reflected in any statutory language. These policies would require him to withdraw from receiving Social Security benefits and repay all such benefits already received in order to avoid Medicare Part A. He complains that the effect of the challenged POMS is to force him and all citizens to enroll in Medicare Part A whether they want to or not. He wishes to receive monthly Social Security benefits without any Medicare coverage. *See* Pl.'s Mem. at 38 ("[A]s was stated above, BRIAN HALL is entitled to Social Security and Medicare already, but he does not want any Medicare benefits.").

## II.  STANDARD OF REVIEW

A court must consider four factors in deciding whether to issue a temporary restraining order:[2]

1.   whether the movant has shown a substantial likelihood of success on the merits;

2.   whether the movant would suffer irreparable injury if the injunction is not granted;

3.   whether the issuance of a preliminary injunction would cause substantial harm to other interested parties; and

4.   whether the public interest would be served by the issuance of an injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998). The foregoing factors should be balanced on a "sliding scale," *i.e.*, a lesser showing on one factor can be surmounted by a greater showing on another factor. *CSX Transp., Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005). Even

---

[2] The same standard applies to both temporary restraining orders and to preliminary injunctions. *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003).

so, in order to justify intruding into the ordinary litigation process by issuing a temporary restraining order,  it is critical that a movant 1) make a substantial showing of likelihood of success on the merits,  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999), and 2) make a showing of at least some injury.  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).  A temporary restraining order is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

## III.  APPLICABLE LAW

The Medicare Act, which is Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, established a program of health insurance for the elderly and disabled.  Medicare Part A, called Hospital Insurance, covers services furnished by hospitals and other institutional providers. 42 U.S.C. §§ 1395c-1395i-4.  Entitlement to Medicare Part A benefits occurs automatically for individuals who turn 65 and are receiving monthly Social Security benefits under 42 U.S.C. § 402. *See* 42 U.S.C. § 426(a) ("Every individual who . . . has attained the age of 65, and is entitled to monthly insurance benefits under section 402 of this title . . . shall be entitled to hospital insurance benefits under part A of this chapter. . . .").  By contrast, Medicare Part B, which provides supplemental medical insurance benefits for certain medical and health care services not otherwise covered under Medicare Part A, including physician services, is an optional program to which individuals are not automatically entitled.  Individuals entitled to Part A must pay for Part B and may choose to opt out of Part B.  42 U.S.C. §§ 1395j-1395w-4.  "This optional coverage [under Part B] . . . supplements the mandatory institutional health benefits (such as coverage for hospital expenses) provided by Part A." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 674-75 (1986).

An individual can relinquish her/his entitlement to Medicare Part A benefits by withdrawing her/his application for monthly Social Security benefits by submitting a written request pursuant to 20 C.F.R. § 404.640.  If an individual has already begun to receive Social Security retirement benefits, s/he can still withdraw from that program but only if, *inter alia*, the SSA determines that "[a]ll benefits already paid based on the application being withdrawn are repaid" or SSA is "satisfied that they will be repaid."  20 C.F.R. § 404.640.

## IV.  ANALYSIS

Mr. Hall cannot afford to repay his Social Security retirement benefits or live without them.  However, he does not challenge the statutory provisions of the Social Security Act or the agency regulations promulgated thereunder.  Rather, the focus of Mr. Hall's petition for a temporary restraining order is three provisions in SSA's POMS, which he asserts "serve to tie monthly benefits under Social Security and Medicare Part A enrollment together and to confiscate an individual's Social Security monthly benefits if he or she attempts to opt out of Medicare, Part A."  Pl.'s Mem. at 8.  The POMS state, in relevant part:

> *POMS HI 00801.002, Waiver of HI Entitlement by Monthly Beneficiary*
>
> **A. INTRODUCTION**
>
> Some individuals entitled to monthly benefits have asked to waive HI Entitlement because of religious or philosophical reasons, or because they prefer other health insurance.
>
> **B. POLICY**
>
> Individuals entitled to monthly benefits which confer eligibility for HI may not waive HI Entitlement.  The only way to avoid HI Entitlement is through withdrawal of the monthly benefit application.  Withdrawal requires repayment of all [Retirement Survivors Disability Insurance]

and HI benefit payments.

*POMS HI 00801.34, Withdrawal Considerations*

**A. POLICY**

To withdraw from the HI program, an individual must submit a written request for withdrawal and must refund any HI benefits paid on his/her behalf as explained in GN00206.095B.I.c.  An individual who filed an application for both monthly benefits and HI may:

- Withdraw the claim for monthly benefits without jeopardizing HI entitlement; or

- Withdraw the claim for both monthly benefits and HI.

The individual may not elect to withdraw only the HI claim. . . .

*POMS GN 00206.020, Withdrawal Considerations When Hospital Insurance is Involved*

**B. POLICY**

The claimant can withdraw an application for:

- RSI [Retirement or Survivors Insurance, i.e., Social Security] cash benefits only;

- RSI cash benefits and HI insurance coverage . . .; or

- Medicare [Part B] only. . . .

However, a claimant who is entitled to monthly RSI benefits cannot withdraw HI [Medicare Part A] coverage only since entitlement to HI [Medicare Part A] is based on entitlement to monthly RSI benefits. . . .[3]

Mr. Hall seeks an order to enjoin Defendants Tom Daschle, Secretary of HHS, and Michael J.

---

[3] The foregoing policies may be found on the Internet at https://secure.ssa.gov/apps10/poms.nsf/partlist!OpenView.

Astrue, SSA Commissioner, from enforcing the POMS by "enrolling Plaintiff, BRIAN HALL, in Medicare, Part A," and from denying him Social Security benefits while this case is litigated.  Pl.'s Mem. at 47.

It is passing strange that SSA insists that all persons receiving Social Security retirement benefits, a federal program that is running out of money, also must be part of Medicare Part A, another federal program that overruns budgets.  However, that conundrum is for another day when this case gets to the merits of the Plaintiffs' Complaint.  The issue now is much more narrow: should the Court enjoin Defendants from enrolling Mr. Hall in Medicare Part A and denying him Social Security benefits because he is not so enrolled?

The question rests, at the outset, on a false premise.  Defendants do not, and did not, "enroll" Mr. Hall in Medicare Part A.  Section 426(a) never uses the word "enrollment," or any variation thereof, but rather refers only to "entitlement."  *See* 42 U.S.C. § 426(a).  Mr. Hall applied for all insurance benefits for which he was entitled under the Social Security Act and, upon reaching age 65, automatically became entitled to Medicare Part A benefits without any action by Defendants. The Defendants explain:

> There is . . . no separate statutory or current regulatory means of avoiding one's "entitlement" to Medicare Part A benefits, at least for so long as one retains entitlement to monthly Social Security benefits. Indeed, entitlement to Medicare Part A arises automatically for persons who are entitled to monthly Social Security benefits.  A person could avoid entitlement to Medicare Part A by avoiding entitlement to monthly social security retirement benefits by failing to request the latter.  One way to achieve this result is simply not to file an application for monthly Social Security benefits.  *See* 42 U.S.C. 402 [sic].

Defs.' Opp'n at 5.  Under Defendants' interpretation of the relevant statutes and regulations, the

validity of which is left for another day, since Mr. Hall became entitled to Medicare Part A benefits, he has had the right to request that certain hospital services be paid for by Medicare Part A, but the government did nothing to cause Mr. Hall to become "entitled" to Medicare Part A, nor did it take any action to "enroll" him.

A temporary restraining order presupposes that an action has occurred or will occur that must be enjoined immediately to prevent irreparable harm to the moving party.  There is no action for the Court to enjoin here, and hence no cause for issuing a temporary restraining order.

## V.  CONCLUSION

Because the Court is presented with no action that it might enjoin, Plaintiff Brian Hall's Motion for a Temporary Restraining Order will be denied.  A memorializing order accompanies this Memorandum Opinion.

Date: January 28, 2009                              _____/s/_____
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge