**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BRIAN HALL, *et al*.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**KATHLEEN SEBELIUS,[1] Secretary, Department of Health & Human Services, *et al.***<br><br>**Defendants.** | ) | **Civil Action No. 08-1715 (RMC)** |

**MEMORANDUM OPINION**

Brian Hall, Lewis Randall, Norman Rogers, John J. Kraus, and Richard K. Armey are retirees who "do not want to apply for, or want to disenroll from Medicare, Parts A and B . . . [but] do want to apply for and/or be paid their monthly Social Security benefits to which they are entitled." Am. Compl. [Dkt. # 4] ¶ 11. They have filed this lawsuit pursuant to the Medicare Act, 42 U.S.C. § 1395 *et seq.*, the Social Security Act, 42 U.S.C. § 401 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, alleging that the Social Security Administration's ("SSA") regulations regarding Medicare Part A, as set forth in the SSA's Program Operations Manual System ("POMS") are invalid and operate either to deprive Plaintiffs of their right to Social Security benefits or to force them to "enroll in" Medicare Part A against their will. Defendants Kathleen Sebelius, Secretary of the Department of Health and Human Services ("HHS") — of which the SSA is a part — and Michael J. Astrue, Commissioner of the SSA, move to dismiss. Dkt. # 12.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kathleen Sebelius is substituted as Secretary for her predecessor, Michael O. Leavitt, Secretary of the U.S. Department of Health and Human Services.

## I. FACTS

Pursuant to the relevant provisions of the Social Security Act, "[e]very individual who has attained age 65 and is entitled to monthly insurance benefits . . . shall be entitled to hospital insurance benefits under Part A of [the Medicare Act]." 42 U.S.C. § 426(a). Plaintiff retirees "do not want to apply for, or want to disenroll from Medicare, Parts A and B . . . [but] do want to apply for and/or be paid their monthly Social Security benefits to which they are entitled." Am. Compl. ¶ 11. When Plaintiffs filed their Amended Complaint in December 2008, three of the five plaintiffs — Mr. Hall, Mr. Kraus, and Mr. Armey — had been receiving monthly Social Security benefits for several years. *See id.* ¶¶ 3, 6-7. Mr. Kraus and Mr. Armey were also participants in the Medicare Part A insurance program, and Mr. Hall would be required to accept Medicare Part A beginning in January 2009. *Id.* The remaining plaintiffs, Mr. Randall and Mr. Rogers, were eligible for monthly Social Security benefits at the time the Amended Complaint was filed but had not applied for them, apparently to avoid being required to accept Medicare Part A. *See id.* ¶¶ 4-5. All Plaintiffs argue that the SSA's policies, as set forth in the POMS, "are patently contrary to the Social Security Act" in that they require Plaintiffs to accept Medicare Part A as a condition of receipt of their monthly Social Security benefits. *See id.* ¶ 34.

The POMS is internal guidance for SSA employees, and interprets the Social Security Act and other relevant statutes. *See* SSA's Policy Information Site - About POMS, https://secure.ssa.gov/apps10/poms.nsf/aboutpoms (last visited September 28, 2009). According to a "Disclaimer" on the SSA's website,

> The POMS states only internal SSA guidance. It is not intended to, does not, and may not be relied upon to create any rights enforceable at law by any party in a civil or criminal action. Further, by posting

> the POMS, SSA is not thereby limited from exercising its otherwise lawful prerogatives. If the content of the POMS conflicts with the Social Security Act, another relevant statute, SSA regulations, or Social Security Rulings, those authorities have priority over the POMS.

*Id.* The POMS contains several provisions relating to Medicare Part A (a.k.a. "Health Insurance" or "HI"). The three challenged herein — POMS HI 00801.002, POMS HI 00801.034, and POMS GN 00206.020 — all state that a claimant who is entitled to monthly benefits may withdraw from Medicare Part A by withdrawing his application for monthly benefits, but he may not withdraw only from Medicare Part A while retaining his monthly benefits. For example, POMS 00801.002 states, under the heading "Policy," "Individuals entitled to monthly benefits which confer eligibility for HI may **not** waive HI Entitlement. The only way to avoid HI Entitlement is through withdrawal of the monthly benefit application. Withdrawal requires repayment of all RSDI and HI benefit payments." SSA - POMS: HI 00801.002 - Waiver of HI Entitlement by Monthly Beneficiary - 08/30/92, https://secure.ssa.gov/apps10/poms.nsf/lnx/0600801002!opendocument (last visited September 28, 2009) (emphasis in original). In other words, one must be receiving Social Security benefits to be "entitled" to Medicare Part A but one cannot escape Medicare Part A without repaying all benefits received and forgoing Social Security. The other POMS provisions at issue contain similar language.

Plaintiffs challenge the POMS on the ground that it is the SSA's policy, as expressed in the POMS, and not the Social Security Act that prevents Plaintiffs from withdrawing from Medicare Part A while still receiving Social Security. Defendants have moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs' understanding of the POMS and its relation to the statute is flawed and, furthermore, that Plaintiffs lack standing to

bring this claim, have failed to exhaust their administrative remedies, and have identified no final agency action subject to judicial review. *See* Defs.' Mem. In Supp. of Mot. to Dismiss ("Defs.' Mem.") [Dkt. # 12] at 1-2.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A defendant moving to dismiss pursuant to Rule 12(b)(1) argues that the court lacks subject matter jurisdiction over a plaintiff's claims. Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

A motion to dismiss pursuant to Rule 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. A sufficient complaint "contains a short and plain statement of the claim showing that the pleader is entitled to relief" enough "to give a defendant fair notice of the claims against him." *Ciralsky v. CIA*, 355 F.3d 661, 668-70 (D.C. Cir. 2004) (citing Fed. R. Civ. P. 8(a)). Although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds for his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The facts

alleged "must be enough to raise a right to relief above the speculative level," *id.*, and a court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008).

For both a Rule 12(b)(1) and a Rule 12(b)(6) motion, the Court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003). In deciding a Rule 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). In deciding a Rule 12(b)(1) motion, however, a court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

**B. "Final Agency Action" and Exhaustion of Administrative Remedies Under the APA**

The APA allows courts to review agency actions and to set aside those actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Courts may not, however, review non-final agency actions. *Fund for Animals, Inc. v. United States BLM*, 460 F.3d 13, 18 (D.C. Cir. 2006). A final agency action "1) marks the consummation of the agency's decision making process — it must not be of a merely tentative or interlocutory nature, and 2) the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177 (1997); *Domestic Secs. v. SEC*, 333 F.3d 239, 246 (D.C. Cir. 2003). Therefore, prior to reaching the merits of a plaintiff's

claims, a court must consider whether the agency's position is definitive and whether it has a "direct and immediate effect" on the parties. *Indep. Petroleum Ass'n v. Babbitt*, 235 F.3d 588, 595-96 (D.C. Cir. 2001).

Furthermore, even where there is final agency action, the Court must consider "[t]he waivable element . . . that the administrative remedies prescribed by the [agency] be exhausted." *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). The Social Security Act provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "[I]f plaintiffs make no claim that any of their number exhausted their remedies . . . , they can secure judicial review only if the exhaustion requirement is excused." *Tataranowicz v. Sullivan*, 959 F.2d 268, 273-74 (D.C. Cir. 1992). "A court may waive the exhaustion requirements of § 405(g) when: (1) the issue raised is entirely collateral to a claim for payment; (2) plaintiffs show they would be irreparably injured were the exhaustion requirement enforced against them; and (3) exhaustion would be futile." *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 16 (D.D.C. 2008) (citing *Bowen v. City of New York*, 476 U.S. 467, 483-85 (1986)); *accord, e.g., Kildare v. Saenz*, 325 F.3d 1078, 1082 (9th Cir. 2003). In such situations, "a district court may, in its discretion, excuse exhaustion if 'the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.'" *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)).

## III. ANALYSIS

The Government moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs lack standing to pursue these claims, that the POMS provisions are not final agency action, and that Plaintiffs failed to exhaust their administrative remedies. Rule 12(b)(1) applies to lack of standing, while Rule 12(b)(6) applies to non-final agency action and failure to exhaust. The Court will address each of these arguments in turn.

### A. Standing

Defendants challenge Plaintiffs' standing under Article III of the United States Constitution. If Plaintiffs cannot meet this constitutional requirement, the Court lacks jurisdiction to reach the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *Grand Council of the Crees v. FERC*, 198 F.3d 950, 954 (D.C. Cir. 2000). To have Article III standing, a plaintiff must establish: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Plaintiffs Mr. Randall and Mr. Rogers do not have standing to challenge the POMS. These two plaintiffs have suffered no injury-in-fact as a result of Defendants' actions because they have not yet attempted to receive Social Security benefits and, therefore, are not subject to Medicare Part A. *See* Am. Compl. ¶¶ 4-5. They allege that they "are aware of the [challenged POMS provisions] . . . and understand that for them not to enroll in Medicare, Part A, or to disenroll from

Medicare, would cause them to forfeit their Social Security monthly benefits." Am. Compl. ¶ 26. However, as they have not applied for any benefits yet, any injury is at this point hypothetical or speculative, and thus insufficient to establish standing.[2] *See Friends of the Earth*, 528 U.S. at 181; *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

Conversely, Messrs. Kraus, Armey, and Hall have applied for and are receiving monthly Social Security benefits and wish to continue to do so; however, they wish to opt-out of Medicare Part A. Assuming that the POMS prevent them from declining Medicare Part A while receiving the monthly benefits to which they are entitled, it appears Plaintiffs have a redressable injury and, thus, standing to pursue this claim. As the Court found in *Iyengar v. Barnhart*, 233 F. Supp. 2d 5, 10 (D.D.C. 2002),

> [I]n order [] for plaintiffs to establish their standing to sue, they need not eliminate all doubt as to whether the challenged action . . . caused [their injury]. . . . Rather, plaintiffs must show only (1) a substantial probability that [their injury] was or is being caused by the [defendant's] policy, and (2) a reasonable likelihood that eliminating that policy will [redress that injury].

*See also* Defs.' Mem. at 27-28 ("Assuming plaintiffs could establish . . . that the POMS provisions (rather than the statute and regulations) were the source of the denial of their claims, it would be fully within Commissioner's power to set aside the challenged provisions.").

---

[2] This Circuit has said that if at least one plaintiff can demonstrate that he has standing, the Court "need not consider the standing of the other plaintiffs to raise that claim." *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996). Nonetheless, the claims of Messrs. Randall and Rogers still must be dismissed because they have not met the requirement under the Social Security Act that a claimant "present" his or her claim to the Secretary. *See Mathews v. Eldridge*, 424 U.S. 319, 328-329 (1976) (finding that "the requirement that a claim for benefits shall have been presented to the Secretary" is nonwaivable); *National Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1131 (D.C. Cir. 1992).

**B. Final Agency Action**

Having found that the Court is not deprived of jurisdiction over the claims of Messrs. Hall, Kraus, and Armey, the Court must determine whether the POMS provisions at issue constitute final agency action. Non-final agency action is not subject to judicial review under the APA. "'Agency action' is defined by the APA as 'the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 n.5 (D.C. Cir. 2005) (quoting 5 U.S.C. § 551(13)). A final agency action is one that (1) represents the consummation of the agency's decisionmaking process and (2) determines rights or obligations or creates legal consequences. *See Bennett*, 520 U.S. at 177-78; *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000). The POMS meets both prongs of this test.

Agency actions that have undergone extensive review are considered definitive where they mark the consummation of the agency's decision making process. *Appalachian Power Co.*, 208 F.3d at 1022 (finding this condition met where the Environmental Protection Agency's internal "Guidance," in its challenged form, was "unequivocal" in its policy statements and was issued "follow[ing] a draft circulated four years earlier and another, more extensive draft circulated [prior to that]"). The POMS is definitive because the SSA issued it only after extensive review. Various SSA components with specific expertise write each provision of the POMS, which are then subject to preliminary and final rounds of review. *See* Office of the Inspector General, Audit Report - A-13-97-92002, http://www.ssa.gov/oig/ADOBEPDF/audit_htms/97-92002.htm (last visited September 28, 2009) ("POMS procedures are written by components with expertise in specific program areas. For example, POMS RM 00205.000, Resolving Social Security Number Problems,

is written by staff in the Division of Entitlement under the Office of Program Benefits Policy. The Division of Directives Management has responsibility for the preliminary and final review of the procedures."). Furthermore, the possibility of future SSA revision of POMS does not affect POMS' current status as final agency action because "all laws are subject to change" and therefore "[t]he fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment." *Appalachian Power Co.*, 208 F.3d at 1022 (citation omitted).

The POMS remain definitive and mark the consummation of the SSA's decision-making process despite being issued without public notice and comment. Interpretive rules, unlike substantive rules, may constitute final agency action without fulfilling the APA's requirement of public notice and comment. *See* 5 U.S.C. § 553(b) (an exception to the public notice and comment requirement exists for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice"); *Appalachian Power Co.*, 208 F.3d at 1021 ("'Interpretative rules' and 'policy statements' may be rules within the meaning of the APA and the Clean Air Act, although neither type of 'rule' has to be promulgated through notice and comment rulemaking."). The POMS provisions are interpretive rules. *See Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003) (noting that POMS are "administrative interpretations" and "not products of formal rulemaking"); *Power v. Barnhart,* 292 F.3d 781, 785-86 (D.C. Cir. 2002) (treating the POMS as an internal "interpretive document" of the SSA). Therefore, the POMS is excepted from the requirement of public notice and comment. *See, e.g., Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir. 1983) (finding Social Security claims manual did not need to fulfill the general APA requirement for public notice and comment). The SSA's extensive review of POMS is sufficiently definitive to fulfill the first condition of final agency action, even in the

absence of public notice and comment.

The POMS also meets the second requirement for final agency action — it determines rights and creates legal consequences. The Court agrees with Plaintiffs that the POMS, and not the Social Security Act or the accompanying regulations, created the condition Plaintiffs challenge here.[3] The finality of agency actions is interpreted in a "pragmatic" way. *Gem County Mosquito Abatement Dist. v. EPA*, 398 F. Supp. 2d 1, 11 (D.D.C. 2005) (quoting *FTC v. Standard Oil Co.*, 449 U.S. 232, 239 (1980)). A pragmatic analysis demonstrates the unlikeliness of Defendants' claim that the POMS merely mirrors the Social Security Act and regulation, as neither the statute nor the regulation requires a withdrawal from retirement benefits in order to withdraw from Medicare Part A. The Social Security Act states, in relevant part, "Every individual who has attained age 65 and is entitled to monthly insurance benefits [*i.e.*, monthly Social Security benefits] . . . shall be entitled to hospital insurance benefits under [Medicare Part A]." 42 U.S.C. § 426(a). Similarly, the federal regulation does not link withdrawal from Social Security benefits with withdrawal from Medicare Part A; rather, it only states that individuals are permitted to withdraw from monthly *Social Security benefits* if, *inter alia*, "[a]ll benefits already paid based on the application being withdrawn are repaid or we are satisfied that they will be repaid." 20 C.F.R. § 404.460. Neither the statute nor the regulation specifies that Plaintiffs must withdraw from and repay retirement benefits in order to withdraw from Medicare Part A. In contrast, the POMS explicitly states that condition, mandating: "The only way to avoid [Medicare Part A] is through withdrawal of the monthly [Social Security] benefit

---

[3] This does not conflict with the Court's earlier holding that under the Social Security Act Plaintiffs are automatically "entitled' to Medicare Part A, as the earlier issue is distinct from whether an individual must withdraw from retirement benefits in order to withdraw from Medicare Part A. *See* February 25, 2009 Memorandum Opinion [Dkt. # 13].

application." POMS HI 00801.002. Thus, it appears that the POMS determines Plaintiffs' rights or obligations in this instance and is an action from which legal consequences flow.

Finally, the Court takes into consideration the fact that other courts have reviewed the POMS and afforded it *Skidmore*[4] deference. Although the POMS does not have the force of law, which would entitle it to the high level of deference described in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), most courts have treated the POMS as interpretive rules entitled to deference at the lower level established in *Skidmore v. Swift & Company*. *See Wash. State Dept. of Soc. and Health Servs. v. Guardianship Estate of Wash. State Dept. of Soc. and Health Servs.*, 537 U.S. 371, 385-86 (2003) (POMS may be treated with deference even though it was not the product of formal rulemaking) (citing *Skidmore*, 323 U.S. at 139-140 (1944)); *Power v. Barnhart*, 292 F.3d at 785-86 (POMS is an agency interpretation which "lack[s] the administrative formality or other attributes that would justify substantial judicial deference under *Chevron* . . . and hence . . . [it] would at best qualify for the more limited form of deference accorded under *Skidmore*.") (internal citations omittted); *accord Davis v. Secretary of Health and Human Services*, 867 F.2d 336, 340 (6th Cir. 1989) ("Although the POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law, it is nevertheless persuasive."). There would be no need for a court to specify a particular level of deference for the POMS if the POMS were unreviewable by the courts; therefore, the courts' specification of a level of deference presumes that the POMS is final agency action. Accordingly, the POMS is subject to judicial review.

---

[4] *Skidmore v. Swift & Co.*, 533 U.S. 218 (2001).

**C. Exhaustion of Administrative Remedies**

Finally, the Court must consider whether these plaintiffs exhausted their administrative remedies or whether exhaustion should be excused. There is some uncertainty regarding whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a Rule 12(b)(6) motion for failure to state a claim. *See Marcelus v. Corr. Corp. of America/Corr. Treatment Facility*, 540 F. Supp. 2d 231, 235 n. 4 (D.D.C. 2008) (collecting cases). The recent trend in this District, however, is to treat failure to exhaust as a failure to state a claim rather than as a jurisdictional deficiency. *See, e.g., Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F. Supp. 2d 59, 64 n. 6 (D.D.C. 2008); *Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d 181, 190 (D.D.C. 2008); *Marcelus*, 540 F. Supp. 2d at 234-35; *but see Adams v. U.S. Capitol Police Bd.*, 564 F. Supp. 2d 37, 40 (D.D.C. 2008) ("When a plaintiff fails to exhaust administrative remedies, dismissal under 12(b)(1) is appropriate."). In particular, this Court finds dismissal under Rule 12(b)(1) for failure to exhaust is inappropriate here inasmuch as requirements for exhaustion as specified by the Social Security Act can be tolled or waived due to equitable considerations.[5] *See Mathews v. Eldridge*, 424 U.S. at 328 (finding that there are

---

[5] Defendants erroneously declare that "the Supreme Court has now explicitly recognized [in *Shalala v. Illinois Council*, 529 U.S. 1, 13 (2000)] th[at] exhaustion requirements under Social Security and Medicare are statutory, and thus not subject to various judicially created 'exceptions.'" Defs.' Mem. at 25. The *Illinois Council* Court discussed the policy reasons for requiring exhaustion, but still found the requirement waivable in some circumstances:

> Proceeding through the agency in this way provides the agency the opportunity to reconsider its policies, interpretations, and regulations in light of those challenges. Nor need it waste time, for the agency can waive many of the procedural steps set forth in § 405(g) . . . and a court can deem them waived in certain circumstances[.]

529 U.S. at 24 (internal citation omitted).

"conditions which must be satisfied in order to obtain judicial review under § 405(g)[,] . . . only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary . . . . The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. . . ."); *Triad at Jeffersonville I*, 563 F. Supp. 2d at16 ("The Supreme Court has repeatedly held that the exhaustion requirements described in § 405(g) may be waived[.]").

For the remaining Plaintiffs to have exhausted their administrative remedies under the Social Security Act or the Medicare Act, they must have received (1) an initial determination, (2) reconsideration, (3) a hearing before an administrative law judge and, finally, (4) Appeals Council review. 20 C.F.R. § 404.900(a)(1). "When you have completed the steps of the administrative review process listed in paragraphs (a)(1) through (a)(4) of this section, we will have made our final decision. If you are dissatisfied with our final decision, you may request judicial review by filing an action in a Federal district court." *Id.* § 404.900(a)(5); *see City of New York*, 476 U.S. at 471-72 ("Proceeding through these three stages [of reconsideration, hearing, and Appeals Council] exhausts the claimant's administrative remedies.").

To the extent the remaining Plaintiffs have engaged in the administrative process at all, none has gotten so far as to receive a hearing before an administrative law judge. Specifically, at the time of the filing of this action, Mr. Armey was receiving Social Security benefits but had not taken any additional action towards the SSA; Mr. Hall had telephoned the SSA to inquire about the policy and request withdrawal from solely Medicare Part A; and Mr. Kraus had written to his Congresswoman and, separately, requested in a February 8, 2006 letter that the SSA provide him with a hearing before an administrative law judge. *See* Am. Compl ¶¶ 24-29. Thus, all three

Plaintiffs have received initial determinations,[6] and Mr. Hall and Mr. Kraus have sought reconsideration by telephone and letter, respectively. *See* 20 CFR § 404.908(a) ("If you are dissatisfied with the initial determination, you may request that we reconsider it. In addition, a person who shows in writing that his or her rights may be adversely affected by the initial determination may request a reconsideration."). Mr. Hall's request to withdraw from only Medicare Part A was denied over the phone and Mr. Kraus "was informed on December 21, 2005, that . . . 'There are no provisions in the law allowing for a waiver of Medicare entitlement.'" Am. Compl. ¶ 27. Mr. Kraus then sought an administrative hearing, but received no response from the SSA for approximately three years. *Id.* Thus, no Plaintiff has fully exhausted his administrative remedies, as none has received an administrative hearing nor an Appeals Council review.

Plaintiffs argue that there are no administrative remedies available to them because the administrative procedure cited above "relate[s] to initial determinations of Social Security and Medicare 'entitlement' to benefits and . . . the amount of benefits under Medicare," rather than to Plaintiffs' desire to "not enroll in, or disenroll from, Medicare Part A." Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") [Dkt. # 15] at 23. However, this "distinction" merely represents two sides of the same coin, as, pursuant to the very POMS provisions Plaintiffs challenge, Medicare Part A is directly linked to Social Security benefits. Should Plaintiffs need guidance in beginning the administrative process, 20 C.F.R. § 422.515 provides a list of forms "for use by the public to request a withdrawal of an application, a reconsideration of an initial determination, a hearing, [or] a review of an administrative law judge's decision." Alternatively, Plaintiffs might seek administrative review

---

[6] 20 C.F.R. § 404.902 ("[I]nitial determinations include, but are not limited to, determinations about (a) Your entitlement or your continuing entitlement to benefits . . . .").

in a more informal manner, by writing to the SSA and requesting to withdraw from Medicare Part A but keep their Social Security benefits, as Mr. Kraus did. The fact that Mr. Kraus sought and received reconsideration and sought an administrative hearing — though Defendants had not given him one as of the filing of these motions — belies Plaintiffs' argument that there are no administrative remedies available to them.

Thus, Plaintiffs' failure to exhaust their remedies is fatal to their claims unless the Court determines the exhaustion requirement should be excused.[7] "In this circuit, the exhaustion requirement may be waived only in the most exceptional circumstances." *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Tr. of UDC Chairs Chapter, Am. Ass'n of Univ. Professors*, 56 F.3d 1469, 1475 (D.C. Cir. 1995). One such circumstance is where Plaintiffs can demonstrate exhaustion would be futile. *See id.* The futility exception only applies where exhaustion would be "clearly useless," such as where the agency "has indicated that it does not have jurisdiction over the dispute, or because it has evidenced a strong stand on the issue in question and an unwillingness to reconsider the issue." *Randolph-Sheppard Vendors v. Weinberger*, 795 F.2d 90, 106 (D.C. Cir. 1986). Even then, "where an agency has articulated a very clear position on the issue which it has

---

[7] In Mr. Kraus's case it appears that blame for his failure to exhaust administrative remedies lies with the SSA, not with himself. Mr. Kraus received a reconsideration by letter dated December 21, 2005. *See* Am. Compl. ¶ 27. He was required to request an administrative hearing in writing within 60 days of receiving that letter, *see* 20 C.F.R. § 404.933, which he did. *See* Am. Compl. ¶ 27. However, the SSA never processed that request. In their reply brief, Defendants state that Mr. Kraus's request "may have unfortunately been misplaced after being signed for by an SSA employee." Defs.' Reply [Dkt. # 18] at 12. At the time of the filing of Defendants' reply, "SSA [had] forwarded plaintiff Kraus' request to the appropriate office within DHHS for appropriate processing." *Id.* at 13. Given this history, even if the Court were to find exhaustion not excusable on other grounds, the requirement would be excused for Mr. Kraus on the basis of the SSA's delay. *See, e.g., Angel v. Pan Am. World Airways, Inc.*, 519 F. Supp. 1173, 1177 (D.D.C. 1981) (finding exhaustion futile where plaintiff's complaint had been pending before the agency for approximately three years with no action).

demonstrated it would be unwilling to reconsider, we require the *certainty* of an adverse decision or indications that pursuit of administrative remedies would be clearly useless." *UDC Chairs Chapter*, 56. F.3d at 1475 (emphasis added).

This Circuit has therefore found that

> [w]hen an agency has committed itself not to change its rules unless judicially compelled to do so, has made known that its general views are contrary to those of the complainant, and has never given an inkling that it would consider a matter afresh, and when the regulations in question have received careful attention within and outside the agency, a complainant need not make a *pro forma* request that the agency redo its system.

*Etelson v. OPM*, 684 F.2d 918, 925 (D.C. Cir. 1982). Similarly, exhaustion may be excused where "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law[.]" *DL v. District of Columbia*, 450 F. Supp. 2d 11, 17 (D.D.C. 2006) (citations omitted). For example, courts have recognized the futility of exhaustion where plaintiffs "do not challenge an individual . . . decision by [the agency] where agency expertise would be important" but instead challenge the agency's "policy, pattern, and practice" or "systemic failure to comply with" federal law. *See id.* at 18; *see also Tataranowicz v. Sullivan*, 753 F. Supp. 978, 987 (D.D.C. 1990), *rev'd on other grounds*, 959 F.2d 268 (D.C. Cir. 1992) ("[W]here a claimant alleges more than deviation from applicable regulations and instead asserts a 'systemwide . . . policy that [is] inconsistent in critically important ways with established regulations' and which does not depend on the particular facts of the claimant's case, the exhaustion requirement may be excused.").

In the present case, Plaintiffs bring just such a challenge. They challenge the SSA's policy, as stated in the POMS, requiring individuals wishing to withdraw from Medicare Part A also to withdraw their application for monthly Social Security benefits and repay any benefits previously

received. As previously discussed, this policy is not found in the Social Security Act or federal regulations, as Defendants allege, but was apparently created by the SSA and expressed in its POMS. As Plaintiffs note, there are no facts unique to any of their claims that would allow the SSA to reach a particular decision for one Plaintiff and a different decision for another, or that should be put on the record to later assist this Court. *See* Pls.' Mem. at 29; *D.L.*, 450 F. Supp.2d at 18 (concluding that "requiring exhaustion here would be futile because, given the nature of the claims presented, agency expertise would provide no benefit to the judicial resolution of this case."). Therefore, exhaustion of remedies is futile for Messrs. Hall, Kraus, and Armey and will be excused.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss [Dkt. # 12] will be granted with respect to Plaintiffs Mr. Randall and Mr. Rogers, and denied with respect to Mr. Hall, Mr. Kraus, and Mr. Armey. In light of this decision, pursuant to the Court's February 18, 2009, Minute Order, Defendants shall file an opposition to Plaintiffs' motion for summary judgment [Dkt. # 15] no later than October 30, 2009. A memorializing Order accompanies this Memorandum Opinion.

Date: September 29, 2009

/s/
ROSEMARY M. COLLYER
United States District Judge