UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN HALL, *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KATHLEEN SEBELIUS, Secretary, ) <br> Department of Health and Human ) <br> Services, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 08-1715 (RMC) |

**MEMORANDUM OPINION**

Plaintiffs are retired Federal employees who have reached age 65 and have applied for, and are receiving, Social Security Retirement benefits. As a result, they are "entitled" to Medicare Part A, coverage. They do not, however, want Medicare coverage. And the only avenue provided to Plaintiffs to un-entitle themselves is to cease receiving Social Security Retirement benefits – and to repay all such benefits already received. Plaintiffs declaim that such a requirement is contrary to the Social Security Act, of which Medicare is a part. The Court concludes that Plaintiffs' claims are without merit.

Medicare costs are skyrocketing and may bankrupt us all; nonetheless, participation in Medicare Part A (for hospital insurance) is statutorily mandated for retirees who are 65 years old or older and are receiving Social Security Retirement (so-called 'old age') benefits. Whether Congress intended this result in 1965 or whether it is good fiscal and public policy in 2011 cannot gainsay the language of the statute and the regulations. Accordingly, summary judgment will be entered for Defendants.

## I. FACTS

Plaintiffs Brian Hall, John Kraus, and Richard Armey share the following characteristics:

- They are retired from Federal employment and have attained the age of 65.

- They applied for, and are receiving, Social Security Retirement benefits.

- They are entitled to benefits under Medicare Part A.

- They had previously been enrolled in health plans under the Federal Employees Health Benefit (FEHB) program and wish to continue that coverage in full.

- They do not want to be covered by Medicare Part A and want to disenroll from Medicare Part A.

- They want to continue receiving their monthly Social Security Retirement benefits.

These facts are all undisputed and, for purposes of resolving this dispute, are the only facts that pertain.

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." *Celotex Corp.*, 477 U.S. at 322. To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Id.*; *Celotex*, 477 U.S. at 322.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**B. Standing**

If a plaintiff cannot meet the constitutional requirement of standing, courts lack jurisdiction to reach the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *Grand Council of the Crees v. FERC*, 198 F.3d 950, 954 (D.C. Cir. 2000). To have Article III standing, a plaintiff must establish: "(1) [he] has suffered an 'injury in fact' that is (a)

concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

### III. ANALYSIS

While the Court finds that Plaintiffs have standing with which to bring this lawsuit, they cannot survive summary judgment because the statutory scheme dictates that Medicare Part A is mandatory for those individuals who are 65 years old and are receiving Social Security Retirement benefits.

#### A. Standing Exists

Messrs. Kraus, Armey, and Hall have applied for and are receiving monthly Social Security Retirement benefits and wish to continue to do so; however, they wish to opt-out of Medicare Part A for various personal, financial, and other reasons. Defendants argue Plaintiffs have no standing to sue. As the Court found in *Iyengar v. Barnhart*,

> [I]n order [] for plaintiffs to establish their standing to sue, they need not eliminate all doubt as to whether the challenged action . . . caused [their injury]. . . . Rather, plaintiffs must show only (1) a substantial probability that [their injury] was or is being caused by the [defendant's] policy, and (2) a reasonable likelihood that eliminating that policy will [redress that injury].

233 F. Supp. 2d 5, 10 (D.D.C. 2002). Plaintiffs' alleged injury is being forced to either (1) have inferior insurance foisted upon them, thereby precluding their ability to be covered by superior insurance; or (2) receive their superior non-Medicare Part A insurance at the cost of relinquishing

their Social Security Retirement benefits, and re-paying past benefits received. Plaintiffs ask the Court to remedy this injury by invalidating the internal regulations that dictate this untenable choice – internal regulations which Plaintiffs claim are in contravention of the Social Security Act and the Medicare Act. Assuming this to be the case, the Court would have the power to invalidate those contravening regulations, thereby providing Plaintiffs with the redress they request.

The Secretary extolls the benefits of Medicare Part A and suggests that Plaintiffs would agree they are not truly injured if they were to learn more about Medicare, perhaps through discovery. *See, e.g.*, Defs.' Statement of Genuine Issues of Material Fact with Respect to Pls.' Mot. for Summ. J. [Dkt. #41] ¶ 35. Plaintiffs politely decline. The parties use a lot of ink disputing whether Plaintiffs' desire to avoid Medicare Part A is sensible. This is not an issue the Court needs to address. Plaintiffs have standing because they cannot avoid Medicare without forgoing Social Security Retirement benefits; they argue that there is no statutory tie between the two. This dispute constitutes a case or controversy without regard to why Plaintiffs prefer other insurance coverage. As such, Plaintiffs have standing to bring this lawsuit.

### B. The Social Security and Medicare Statutory Scheme

The Medicare Act, which is enacted at Title XVIII of the Social Security Act and codified at 42 U.S.C. § 1395 *et seq.*, establishes a program of health insurance for the elderly and disabled. Medicare Part A, often called "Hospital Insurance" or "HI," covers services furnished by hospitals and other institutional providers. 42 U.S.C. §§ 1395c–1395i-5. Entitlement to Medicare Part A benefits occurs automatically for individuals who turn 65 and are "entitled" to monthly Social Security Retirement benefits under 42 U.S.C. § 402. *See* 42 U.S.C. § 426(a) ("Every individual who . . . has attained the age of 65, and is entitled to monthly [Social Security benefits] under [42 U.S.C.

§ 402] of this title . . . shall be entitled to hospital insurance benefits under Part A of [this chapter] . . . .").[1] By contrast, Medicare Part B, which provides supplemental medical insurance benefits for certain medical and health care services not otherwise covered under Medicare Part A, including physician services, is an optional program to which individuals are not automatically entitled. Individuals entitled to Part A must pay for Medicare Part B and may choose to opt out of Part B. *See* 42 U.S.C. §§ 1395j-1395w-5. This distinction–between the mandatory nature of Part A and the optional nature of Part B–has been specifically recognized by the Supreme Court: "This optional coverage [under Medicare Part B] . . . supplements the *mandatory* institutional health benefits (such as coverage for hospital expenses) provided by Part A." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 674-75 (1986) (emphasis added).

"Entitled" is the statutory word that applies to both Social Security Retirement benefits and Medicare Part A but one becomes "entitled" through different routes. Under the Social Security Act:

> Every individual who –
>
> (1) is a fully insured individual (as defined in section 414(a) of this title),[2]
> (2) has attained age 62, and
> (3) has filed application for old-age insurance benefits . . .
>
> shall be entitled to an old-age insurance benefit for each month . . . .

---

[1] Certain disabled persons and qualified railroad retirement beneficiaries are also entitled to Medicare Part A coverage. Since Plaintiffs are entitled to Medicare Part A because they are receiving Social Security Retirement benefits, however, this decision focuses only on that category of Medicare Part A beneficiaries.

[2] 42 U.S.C. § 414(a) defines a "fully insured individual" predominately as one who has at least 40 quarters of coverage, *i.e.*, contributions to Social Security over at least 40 quarters of a work life.

42 U.S.C. § 402. Thus, one must *apply* for Social Security Retirement benefits; if you fail to apply, you will not be "entitled" to the benefit, without regard to age or working history. Medicare Part A works differently. As relevant to Plaintiffs, the Medicare statute provides:

> Every individual who –
>
> > (1) has attained age 65, and
> > (2)(A) is entitled to monthly insurance benefits under section [42 U.S.C. § 402] of this title . . .
>
> shall be entitled to hospital insurance benefits under part A of title XVIII [of this chapter] for each month for which he meets the condition specified in paragraph (2) . . . .

42 U.S.C. § 426(a). What this means is that an individual who has applied for Social Security Retirement benefits and qualifies to receive such bebenfits, so that he is "entitled" to Social Security Retirement benefits, automatically becomes "entitled" to Medicare Part A upon his 65th birthday. The only way to avoid entitlement to Medicare Part A at age 65 is to forego the source of that entitlement, *i.e.* Social Security Retirement benefits. There are but two ways to forego Social Security Retirement benefits: (1) fail to apply even though qualified, *see* 42 U.S.C. § 402(a) (requiring the filing of an application); or (2) withdraw one's application and repay all retirement benefits already received, *see* 20 C.F.R. § 404.640.

Social Security regulations provide a means of avoiding entitlement to monthly Social Security Retirement benefits and thereby also provide a means of avoiding entitlement to Medicare Part A benefits. An individual may withdraw an application for Social Security Retirement benefits after it has been filed by submitting a written request and either repaying "[a]ll benefits already paid"

or upon the SSA being "satisfied that they will be repaid." *See* 20 C.F.R. § 404.640.[3] These regulations are of no assistance to Plaintiffs, however, since they want to avoid Medicare Part A and retain their Social Security Retirement benefits.[4]

The interrelationship between Social Security Retirement benefits and Medicare Part A is explained in SSA's Program Operations Manual System ("POMS"), an SSA handbook designed for internal use by SSA employees in processing claims. Plaintiffs focus their challenge on three provisions of the POMS, which they assert force them to enroll in Medicare Part A and provide that they will lose their monthly Social Security Retirement benefits if they choose not to enroll. POMS HI 00801.002, titled "Waiver of HI Entitlement by Monthly Beneficiary," states that a person who is entitled to monthly Social Security Retirement benefits may not "waive" Medicare Part A "entitlement," but may avoid such "entitlement" by withdrawing an individual's application for monthly Social Security Retirement benefits, which would "require[] repayment" of all benefits received. *See* POMS HI 00801.002.

The other two challenged POMS provisions repeat the same premise (specifically referring back to POMS HI 00801.002) while providing additional information about different kinds of permitted withdrawals. POMS HI 00801.034, titled "Withdrawal Considerations," states:

---

[3] The Secretary explains that this repayment regulation was adopted years ago to terminate the practice of applying for benefits, receiving them for a while, and then withdrawing the application, which resulted in an interest-free loan from the government. *See* 75 Fed. Reg. 76256 (Dec. 8, 2010).

[4] The Court notes that 20 C.F.R. § 404.640 was recently amended on December 8, 2010, to include a requirement, *inter alia*, that a withdrawal from Social Security Retirement benefits be "filed within 12 months of the first month of entitlement." *See* 20 C.F.R. § 404.640; *see also* 75 Fed. Reg. 76256 (Dec. 8, 2010). In light of the disposition of this case, this decision does not need to address, nor does it address, whether that one-year limitation would apply to Plaintiffs.

> To withdraw from the HI program, an individual must submit a written request for withdrawal and must refund any HI benefits paid on his/her behalf.... An individual who filed an application for both monthly [Social Security Retirement] benefits and HI may:
>
> • withdraw the claim for monthly [Social Security Retirement] benefits without jeopardizing HI entitlement; **or**
> • withdraw the claim for **both** monthly [Social Security Retirement] benefits and HI.
>
> The individual may **not** elect to withdraw only the HI claim.

POMS HI 00801.34. Finally, POMS GN 00206.020, titled "Withdrawal (WD) Considerations When Hospital Insurance (HI) is Involved," is to the same effect. It concludes: "However, a claimant who is entitled to monthly [Social Security Retirement] benefits cannot withdraw [from Medicare Part A] coverage only, since entitlement to [Medicare Part A] is based on entitlement to monthly [Social Security Retirement] benefits (see HI 00801.002)." POMS GN 00206.020.

Plaintiffs filed this lawsuit pursuant to the Medicare Act, 42 U.S.C. § 1395 *et seq.*, the Social Security Act, 42 U.S.C. § 401 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, alleging that the Social Security Administration's ("SSA") regulations regarding Medicare Part A, as set forth in the SSA's POMS, are invalid and operate either to deprive Plaintiffs of their right to Social Security benefits or to force them to "enroll in" Medicare Part A against their will. *See generally* Am. Compl. ¶¶ 37–60. Plaintiffs seek an order enjoining Defendants from "enforcing" the three challenged POMS provisions, and "allowing Plaintiffs not to enroll in, or to disenroll from, Medicare, Part A, without the loss of their Social Security [Retirement] monthly benefits." Am. Compl. (Prayer for Relief) ¶ 5. The Court will not grant such relief because the POMS are a proper implementation of the Social Security and Medicare Acts.

### C. The POMS Result from Proper Implementation of the Social Security and Medicare Acts and Regulations Thereunder

Just as Plaintiffs complain, they have no choice but to participate in Medicare Part A, unless they forego all Social Security Retirement benefits in the future and repay those benefits already received. This result occurs by operation of law, not the POMS, which only reflect the legal realities. It was not by mistake or inadvertence that SSA published the internal POMS; the Medicare Act specifies that all persons who have reached age 65 and who are receiving Social Security Retirement benefits are "entitled" to Medicare Part A. *See* 42 U.S.C. § 426. The statute does not require any "enrollment" procedure for this entitlement to attach. Successive Secretaries since 1965 have not engaged in rulemaking to establish any enrollment procedure for Medicare Part A. There is a "dis-enrollment" possibility, albeit very unattractive, that allows a 65 year-old beneficiary to make himself un-entitled for Medicare Part A by foregoing one of the essential requirements to become entitled to Medicare Part A – receipt of Social Security Retirement benefits.

Plaintiffs argue that nothing in the Social Security Act deprives them of their Social Security Retirement benefits just because they want to avoid Medicare Part A. Inasmuch as the Medicare Act is part of the Social Security Act, this argument is not entirely accurate. But the point that the Social Security Act, without reference to Medicare Part A, does not specifically state that it requires foregoing Social Security Retirement benefits in order to avoid Medicare Part A is a legitimate one. The point is sufficient to require the Court's attention and consider the matter at length to ensure the Secretary is correct.

The issue for Plaintiffs is the consequence of being "entitled" to Medicare Part A, more than the entitlement itself. If they could be entitled but decline, they would be happy, just as

one can decline Social Security Retirement benefits by not applying for them. Unfortunately for Plaintiffs, the Medicare Act is very clear that persons entitled to Social Security Retirement benefits, *i.e.*, of an age and work history and application therefore, are immediately and automatically entitled to Medicare Part A benefits upon their sixty-fifth birthdays.

That Medicare entitlement has very specific consequences for a retired Federal employee: If a Federal retiree who has attained age 65 is "not covered" by Medicare Part A, perhaps because he withdrew his application for Social Security Retirement benefits, his FEHB "plan, other than a prepayment plan described in" 5 U.S.C. § 8903(4), "may not provide benefits . . . to pay a charge imposed by any health care provider, for inpatient hospital services which are covered for purposes of benefit payments" by Medicare Part A, "to the extent that such charge exceeds applicable limitations on hospital charges established for Medicare purposes." 5 U.S.C. § 8904(b)(1)(A). Thus, even if Plaintiffs were to forego and repay all Social Security Retirement benefits, their FEHB-paid benefits would be no more, and no less, than what Medicare Part A would provide.[5]

Plaintiffs argue that "entitled" to Social Security Retirement benefits does not mean "required to accept" so that "entitled" to Medicare Part A benefits does not mean "required to accept." While the Plaintiffs' plain-English reading of the word "entitled" has its attractions, in context the Medicare "entitled" does not actually mean "capable of being rejected." An individual is "entitled" to Social Security Retirement benefits only *after* he has worked the requisite quarters, attained age 62 (or more), and *filed an application*. *See* 42 U.S.C. § 402. There being no affirmative

---

[5] Defendants recognize that Plaintiff Kraus is exempted from 5 U.S.C. § 8904(b)(1)(A) because he was enrolled in a prepayment plan described in 5 U.S.C. § 8903(4). Defs.' Supplemental Brief [Dkt. # 48] at 2.

filing of an application necessary for a Medicare Part A entitlement, it is a different type of entitlement because of its automatic nature. The Medicare Part A entitlement is tied exclusively to the fulfilment of two requirements: (1) receiving Social Security Retirement benefits; and (2) being age 65 – the removal of either having the effect of disestablishing that entitlement.

Plaintiffs would read "entitled" to require either an application to enroll in Medicare Part A or at least an opportunity to dis-enroll because they define "entitled" to mean: "to give legal right or legal title to, qualify [one] for something; furnish with proper grounds for seeking or claiming something." Pls.' Mem. in Support of its Mot. for Summ. J. [Dkt. #39-1] at 13 (citing *Fagner v. Heckler*, 779 F. 2d 541, 543 (9th Cir. 1985) (citing *Webster's Third New International Dictionary* 758 (1976))). Congress knows how to write such a provision and, in fact, did so for persons who are not entitled to Medicare Part A but have (1) enrolled in Medicare Part B and (2) are citizens or have resided for five years' continuous residence in the United States as aliens lawfully admitted for permanent residence. *See* 42 U.S.C. § 1395*i*-2. Such persons must "enroll" and pay premiums for Medicare Part A coverage. In contrast, as Plaintiffs acknowledge, they are "entitled" to Medicare Part A without enrollment because they are 65 and are receiving Social Security Retirement benefits. Requiring a mechanism for Plaintiffs and others in their situation to "dis-enroll" would be contrary to congressional intent, which was to provide "*mandatory*" benefits under Medicare Part A for those receiving Social Security Retirement benefits. *See Bowen*, 476 U.S. at 674-75.

## V. CONCLUSION

Plaintiffs are trapped in a government program intended for their benefit. They disagree and wish to escape. The Court can find no loophole or requirement that the Secretary

provide such a pathway.  Defendants' Motion for Summary Judgment [Dkt. # 42], which was previously denied without prejudice, is reconsidered and will be granted and Plaintiffs' Motion for Summary Judgment [Dkt. # 51] will be denied.  A memorializing Order accompanies this Memorandum Opinion.


Date: March 16, 2011                              /s/
                                          ROSEMARY M. COLLYER
                                          United States District Judge